# UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF INDIANA, INDIANAPOLIS DIVISION

| | |
|---|---|
| REBECCA HAYNES-BORDAS, | ) |
| | ) |
| PLAINTIFF, | ) |
| | ) |
| vs. | ) **CAUSE NO: 1:16-cv-600** |
| | ) |
| PURDUE UNIVERSITY, | ) |
| PURDUE EXTENSION | ) |
| CENTRAL DISTRICT | ) |
| | ) |
| DEFENDANT. | ) |

## COMPLAINT AND DEMAND FOR JURY TRIAL

### I. Nature of the Case

1. The plaintiff, Rebecca Haynes-Bordas, dedicated twenty-five years of her
   professional career to Purdue University, Purdue Extension Central District
   ("Purdue"). She was a trusted and highly successful employee and a respected
   professional within the broader industry.  In 2012, Haynes-Bordas learned that due to
   a severe heart condition, she would require two surgeries:  one surgery to replace an
   aortic valve which was leaking severely and a second surgery to repair a triple
   aneurysm that was at risk of rupturing.  The surgeries did not go as planned and
   resulted in Haynes-Bordas becoming paraplegic.  In response to this significant
   challenge in her life, she completed arduous rehabilitation and was ready and able to
   return to work. Purdue rewarded her dedication before and after the onset of her

disability by engaging in a series of discriminatory and unconscionable acts leading to the termination of her employment.  Haynes-Bordas brings this action against her former employer, Purdue, alleging that Purdue violated Title III of the Americans with Disabilities Act ("ADA"), as amended, *42 U.S.C. §§ 12181-12189* by discriminating against her due to her disability, by failing to accommodate her disability, by disclosing confidential medical information, by retaliating against her for engaging in protected activity, and by intentionally inflicting emotional distress.

## II. Parties

2. Haynes-Bordas is a resident of Marion County and was an employee of Purdue, as contemplated by the ADA, until Purdue terminated her employment.

3. Defendant, Purdue, is a Land Grant University doing business in Indianapolis, Indiana, Marion County, through its Purdue Extension program.

4. Purdue is an "employer" as that term is defined by *42 U.S.C. § 2000e(B)*.

## III. Jurisdiction and Venue

5. This Court has jurisdiction over this action pursuant to *28 U.S.C. § 1331 and § 1343(a)* and *42 U.S.C. § 2000e-5*, as amended.

6. Venue is proper pursuant to *28 U.S.C. § 1391(c)* as Purdue conducts business in this District.

7. At all times relevant to this action, Haynes-Bordas was an "employee" as that term is defined by *42 U.S.C. § 2000e(f)*.

8. Haynes-Bordas satisfied her obligation to exhaust administrative remedies by timely filing a charge of discrimination (Charge No. 470-2014-02825), *Exhibit A*, with the United States Equal Employment Opportunity Commission (hereinafter "EEOC"), alleging discrimination on the basis of disability discrimination, failure to accommodate her disability, disseminating confidential medical information, and retaliation. Haynes-Bordas received her Notice of Right to Sue from the EEOC and brings this original action within ninety (90) days of receipt thereof, *Exhibit B*.

9. All facts, events, and transactions giving rise to this lawsuit occurred within the geographic environs of the Southern District of Indiana; thus, venue is proper in this Court.

## IV. Factual Allegations

10. Haynes-Bordas was diagnosed with a serious heart condition, requiring multiple surgeries to repair a leaking valve and to prevent a triple aneurysm from rupturing. Due to complications during the surgeries, she is now paraplegic and uses a wheelchair for mobility. She has a physical impairment that substantially limits one or more major life activities.

11. She receives ongoing physical therapy to manage her disability.  Her disability requires an accommodation in order for her to fully participate in the workplace.

12. Due to her disability, Haynes-Bordas is substantially limited in the major life activities of caring for oneself, performing manual tasks, sleeping, walking, standing,

sitting, reaching, lifting, bending, and working.  These limitations require reasonable

accommodations in order for her to perform her job at the workplace.

13. With reasonable accommodations in place, Haynes-Bordas was capable of

performing every task associated with her position.

14. Purdue was aware of Haynes-Bordas's disabilities and the necessary accommodations

through medical documentation provided by Haynes-Bordas's doctor, her

rehabilitation counselor, and by Haynes-Bordas.

15. Haynes-Bordas was hired by Purdue on February 12, 1990.  For all times relevant to

this Complaint, Haynes-Bordas was employed as an Extension Educator.

16. On October 23, 2012, Haynes-Bordas received her annual performance appraisal

from Mr. Walt Sell, the District Director, and the County Extension Board. In every

area of the evaluation, she received a "exceeds expectations". Mr. Sell signed this

document.

17. In October of 2012, her excellent work record compelled Mr. Sell to recommend her

for the position of Interim County Extension Director.

18. During her meeting with Mr. Sell, Haynes-Bordas informed him that she would

require medical attention to correct a heart condition.

19. After Haynes-Bordas disclosed to Mr. Sell her pending medical procedures, which

would require an absence from work, another staff member was selected for the

position.

20. Haynes-Bordas applied for and was granted leave to receive medical treatment under

the Family and Medical Leave Act ("FMLA").

21. On November 26, 2012, Haynes-Bordas took leave from work to complete the medical procedures, which resulted in complications leading to permanent physical disabilities.

22. On November 26, 2012, the first surgery to replace an aortic heart valve was completed.

23. The following day, Haynes-Bordas suffered a major bleed out, requiring an emergency surgery to repair the damage.

24. On January 29, 2013, Haynes-Bordas endured a Triple abdominal aneurysm surgery, during which the surgeon found 3 additional arteries that had dissected. The surgery lasted approximately eleven and a half hours.

25. During this surgery, Haynes-Bordas suffered a spinal stroke resulting in complete paralysis from vertebrae T9 down. The day following this surgery, she developed bleeding requiring another surgery to repair the damaged blood vessel.

26. On February 7, 2013, Haynes-Bordas was admitted to Rehabilitation Hospital of Indiana. The exam confirmed the complete paralysis. She was advised that recovery would be longer than usual due to the multiple surgeries.

27. Haynes-Bordas immediately began the long road of recovery and rehabilitation.

28. In April of 2013, Haynes-Bordas had a conversation with the Administrative Assistant to the Home Extension Central District Director to discuss available medical leave.

29. Haynes-Bordas was informed that her FMLA leave would end on May 25, 2013 and that she would be then eligible for long-term disability leave (LTD).

30. By April of 2013, Haynes-Bordas remained on medical leave when Mr. Sell stated "Oh, I'll have to terminate another Educator."

31. On June 6, 2013, Haynes-Bordas received a letter from Tammy Synesal, Disability Benefits Coordinator for Purdue, stating that she was eligible for LTD effective as of May 25, 2013.

32. The LTD was for as long as two years and effective through May 25, 2015.

33. During the following months, her rehabilitation continued.  On July 5, 2013, Haynes-Bordas informed Mr. Sell that her progress was slow but that she would be prepared to return to work as soon as her physical condition permitted.

34. On August 7, 2013, she received approval for training on driving with a modified van.

35. On August 8, 2013, Haynes-Bordas asked to meet with Mr. Sell so that she could explain her progress and to discuss a schedule for returning to work.  He did not respond to her request.

36. On September 2, 2013, she developed with her Vocational Rehabilitation Counselor an Individual Plan for Employment (IPE).

37. By December 31 of 2013, Haynes-Bordas had obtained her driver's license, completed on-the-job training with her wheelchair, and was progressing ahead of schedule.

38. On January 30, 2014, Mr. Sell requested Haynes-Bordas to provide a plan for returning to work.

39. Following up on Mr. Sell's request, she contacted several individuals in preparation for returning to work.

40. She first spoke with Tammy Synesal from Purdue, who informed her that she could not establish a return-to-work date without approval from a Doctor.

41. Accordingly, she contacted her Doctor, who is the Medical Director of the Spinal Cord Injury Program at Rehabilitation Hospital of Indiana. The first available appointment was March 17, 2014.

42. On February 7, 2014, she spoke with Pat Russel, ADA Coordinator at Purdue, to determine the accessibility of the building where her office is located. Ms. Russel stated to Haynes-Bordas that Purdue is only responsible for accessibility issues for buildings owned and managed by Purdue and that the county is responsible for the Extension Office.

43. Haynes-Bordas is very familiar with the facilities and believes that the only physical modification necessary is an accessible toilet.  The building manager indicated this minor modification would not be a problem.  Mr. Sell still refused to discuss this modification with Haynes-Bordas.

44. Her Vocational Rehabilitation Counselor suggested that she have an attendant during the first months of working.  Notably, Vocational Rehabilitation would pay for the attendant, not Purdue.

45. Haynes-Bordas also informed Mr. Sell that there might be additional physical accessibility issues and that an evaluation should be completed for the building.  He never responded to this request.

46. On March 25, 2014, Haynes-Bordas informed Mr. Sell that the Doctor requires a current evaluation from a Physical Therapist before approving of her return to work.

47. On May 1, 2014, Haynes-Bordas informed Mr. Sell and Steve Wagner, County Extension Director, that she should be ready to return to work in approximately four weeks.

48. On May 14, 2014, Mr. Sell contacted Haynes-Bordas twice, once by voicemail and once by e-mail, asking when would be a good time to contact her and what phone number would be best for contact.   This follows months of Haynes-Bordas keeping Mr. Sell informed of every milestone she achieved. She was suspicious.

49. Her suspicions were validated the following day when Mr. Sell phoned her and stated "You have been off so long, the community needs aren't being met. Unless we have a firm date in the near future, we will need to terminate your position in order to advertise and refill it."

50. Haynes-Bordas asked what community needs are not being met and he just repeated the same statement. Mr. Sell also refused to define "near future" and would not give her a date by which she must return to work.

51. The following day, on May 16, 2014, Haynes-Bordas received a letter from Purdue, signed by Mr. Sell and dated May 15, 2014, terminating her employment.

52. The letter stated she has exhausted both her paid and unpaid leave, which was not true.

53. On May 19, 2014, Haynes-Bordas received a letter from her Doctor clearing her to return to work on May 21, 2014.

54. During her medical leave, Haynes-Bordas continued to keep in touch with clients and community members and even performed work when able to do so.

55. During her medical leave, the District Director and other members of Purdue management shared confidential information about Haynes-Bordas's medical condition with Haynes-Bordas's coworkers.

56. Members of Purdue management treated Haynes-Bordas with shocking contempt, given her condition.

57. Haynes-Bordas filed her Charge of Discrimination with the Equal Employment Opportunity Commission on August 27, 2014, complaining of discrimination, discrimination based on her disability, failure to accommodate her disability, illegal dissemination of confidential medical information, and retaliating against her for requesting a reasonable accommodation for her disability.

58. On June 4, 2014, Purdue posted a job opening for Extension Educator in Marion County for Health and Human Sciences, which was Haynes-Bordas's position.  At this time, she was cleared to work.

59. The reasons provided by Purdue to terminate Haynes-Bordas's employment were pretextual.

60. But for Purdue's failure to accommodate Haynes-Bordas's disability, blatant discrimination, and unconscionable disregard for her condition and the requirements of the ADA, Haynes-Bordas would still be employed by Purdue.

61. Haynes-Bordas received positive performance reviews and was even recommended for a major promotion until her supervisor learned that she would be using a wheelchair upon her return and that some minor modifications to her work space would be necessary.

62. Haynes-Bordas complained to several officials from Purdue about the disability discrimination, dissemination of confidential medical information, and failure to accommodate.

63. Purdue's actions were intentional, willful and in reckless disregard of Haynes-Bordas's rights as protected by Federal law.

64. Haynes-Bordas was and continues to be economically, physically, and emotionally harmed by Purdue's discriminatory and harassing actions.

## V. Count I:  Discrimination under the Americans with Disabilities Act

65. Haynes-Bordas hereby incorporates paragraphs One (1) through Sixty-Four (64) of her Complaint herein.

66. Haynes-Bordas is paraplegic and uses a wheelchair for mobility. She is limited in the major life activities of caring for oneself, performing manual tasks, sleeping, walking, standing, sitting, reaching, lifting, bending, and working.  These limitations require reasonable accommodations in order for her to perform her job at the workplace. Accordingly, she has a disability as contemplated by the Americans with Disabilities Act.

67. Haynes-Bordas satisfied Purdue's work requirements.

68. Purdue violated the ADA by terminating Haynes-Bordas's employment and discriminating against her due to her disability.

69. Purdue treated Haynes-Bordas less favorably in the terms, privileges, and conditions of her employment than similarly-situated coworkers without a disability.

70. Purdue's actions were intentional, willful, and/or undertaken in reckless disregard of Haynes-Bordas's rights as protected by the ADA.

71. Haynes-Bordas has suffered damages as a result of Purdue's unlawful actions.

## VI. Count II:  Retaliation under the ADA

72. Haynes-Bordas hereby incorporates paragraphs One (1) through Seventy-One (71) of her complaint herein.

73. Haynes-Bordas's requests for reasonable accommodations constituted protected activity.

74. Similarly-situated employees who did not engage in protected activity were treated more favorably in the terms, privileges, and conditions of their employment.

75. Purdue unlawfully retaliated against Haynes-Bordas because she engaged in protected activity.

76. Purdue acted with intent, malice, and or reckless disregard as to Haynes-Bordas's legal rights under the ADA.

77. Haynes-Bordas was harmed as a result of Purdue's conduct.

## VII. Count III:  Failure to Accommodate under the Americans with Disabilities Act

78. Haynes-Bordas hereby incorporates paragraphs One (1) through Seventy-Seven (77) of her complaint herein.

79. Haynes-Bordas has a disability, as defined by the ADA.

80. Haynes-Bordas informed Purdue of her disability and Purdue was aware of her requested reasonable accommodations.

81. Purdue refused to accommodate Haynes-Bordas's disability or even engage in the interactive process as required by the ADA.

82. Purdue terminated Haynes-Bordas's employment after depriving her of the accommodations.

83. Haynes-Bordas was harmed as a result of Purdue's conduct.

## VIII.  COUNT IV:  Confidentiality Violations of the ADA

84. Haynes-Bordas hereby incorporates paragraphs One (1) through Eighty-Three (83) of her complaint herein.

85. Haynes-Bordas provided confidential medical and disability-related documents to the appropriate officials of Purdue.

86. Purdue's employees had access to confidential medical and disability-related information concerning Haynes-Bordas's condition.

87. Purdue employees disseminated the confidential medical and disability-related information to certain employees of Purdue who had no need to be aware of Haynes-Bordas's condition.

88. Purdue acted with intent, malice, and or reckless disregard as to Haynes-Bordas's legal rights under the ADA and federal law.

89. Haynes-Bordas was harmed as a result of Purdue's conduct.


## IX.  Count V:  Intentional Infliction Of Emotional Distress


90. Haynes-Bordas hereby incorporates paragraphs One (1) through Eighty-Nine (89) of her complaint herein.

91. Purdue acted intentionally or recklessly in the treatment and harassment of Haynes-Bordas by ignoring her requests for accommodations, exacerbating her condition through unconscionable disregard for her wellbeing, and discrediting her ability to perform her job simply because she is paraplegic.

92. Purdue's conduct was extreme and outrageous.

93. Purdue's acts were and are the cause of Haynes-Bordas's distress.

94. Haynes-Bordas suffers severe emotional distress as a result of Purdue's conduct, requiring medical attention and ongoing treatment.


## Relief Requested


WHEREFORE, Plaintiff, Rebecca Haynes-Bordas, requests that this Court find in her favor and provide her with the following relief:

A.       Enjoin Purdue from engaging in further violations of the ADA;

B.      Order Purdue to rehire Haynes-Bordas with all commensurate compensation,

benefits and seniority or payment of front pay in lieu thereof;

C.      Order Purdue to pay to Haynes-Bordas wages, benefits, compensation, and all

monetary loss suffered as a result of Defendant's wrongful and unlawful actions in

an amount that will make her whole;

D.      Order Purdue to pay to Haynes-Bordas liquidated damages;

E.      Order Purdue to pay to Haynes-Bordas compensatory damages;

F.      Order Purdue to pay Haynes-Bordas's costs and attorney fees incurred in

litigating this action;

G.      Order Purdue to pay to Haynes-Bordas pre- and post-judgment interest on all

sums recoverable, and;

H.      Order Purdue to provide to Haynes-Bordas any and all other legal and/or

equitable relief that may be just and proper.


Respectfully submitted,



_____

S/ Michael S. Dalrymple

Michael S. Dalrymple, (23539-53)

Michael S. Dalrymple, Attorney at Law

1847 Broad Ripple Avenue

Suite 1A

Indianapolis, Indiana 46220

(317) 614-7390

michaeld@dalrymple-law.com

Attorney for Plaintiff, Rebecca Haynes-Bordas

## DEMAND FOR JURY TRIAL

The Plaintiff, Rebecca Haynes-Bordas, by counsel, respectfully requests a jury trial as to all issues deemed so triable.

Respectfully submitted,

_____
S/ Michael S. Dalrymple

Michael S. Dalrymple, (23539-53)

Michael S. Dalrymple, Attorney at Law

1847 Broad Ripple Avenue

Suite 1A

Indianapolis, Indiana 46220

(317) 614-7390

michaeld@dalrymple-law.com

Attorney for Plaintiff, Rebecca Haynes-Bordas

**CERTIFICATE OF SERVICE**

I certify that on the 16th day of March, 2016, I served the foregoing to all parties via the
Electronic Case Filing System.

S/ Michael S. Dalrymple
Michael Dalrymple, #23539-53